Good morning, everyone. The panel has before it four cases. Two of them are being submitted without oral argument on the briefs later today. They are Appeal No. 07-3048, Shelton v. Merit System Protection Board, and Appeal No. 07-3114, Lynch v. Department of the Army. On the argument list, we have two cases, and we'll hear argument first in Appeal No. 06-1599, In Re Trans Texas Holdings. Mr. Parker, good morning. Welcome back. Good morning, Your Honor. Please proceed. May it please this Court, is Trans Texas' contention that the examiner failed to set forth substantial evidence in support of a prima facie obviousness of the properly construed claims in this case. We contend that the Board erred with respect to the construction of the claims. We contend that the Board erred in not finding that it was bound by the marking determination made by the Western District of Texas. And even if this Court finds that the PTO was not so bound, we contend that the examiner and the Board nevertheless erred as a matter of law in its claim construction. If you look at the Board's claim construction, at the Board's review of the claims... The claims held that there's no such thing as non-mutual collateral estoppel against the government. Are you aware of that? Or is it a Supreme Court case called Mendoza? No, Your Honor. I'm not familiar with that case. Isn't there a second problem with saying that Judge Sparks' claim construction should bind the Board, that there was never a final judgment in the case before Judge Sparks? As I understand it, the case was settled, so there was an initial ruling, but no judgment. So how can there be collateral estoppel when there's no final judgment? Your Honor, with respect to that question, which was the primary issue on the collateral estoppel, what we've done on the collateral estoppel issue, this Court has held, as noted in the RF Patents case, that indeed collateral estoppel could attach in the RF Patents case, which I believe Your Honor authored. In the RF Delaware case, that case dealt with a claim construction that was in a summary judgment motion. And the Court there refused to find that there was a collateral estoppel, and that case basically settled after the summary judgment. This Court refused to find that in the context of that summary judgment that there was collateral estoppel effect. However, this Court did note in that case that partial summary judgment could be sufficiently final for issue preclusion, even where the case settled, if interpretations were issued after oral argument and there was a final judgment and a settlement certification was issued. It found that in that particular case, the Court found that there was simply not sufficient oral argument on the claim construction issue in that summary judgment motion. I don't understand your answer. Are you saying that final judgment is not a prerequisite of estoppel? Well, there was a final judgment in this case, Your Honor. There was a dismissal with prejudice and a final judgment in it. I've got it in the record, and I'd be happy to point you to it. But there was a final judgment in it. But wasn't that the key, that there was a final judgment in that? You're still talking about RF Delaware? Yes, yes. In the RF Delaware case, there was a final judgment. There was a settlement, Your Honor. The fact that there was oral argument could not have mattered. Oral argument isn't necessary. Often isn't even helpful, and in most cases, we don't even have it. But both in the RF Delaware case and in the trans-Texas case, there was a final judgment in it. That has to be the key, not oral argument, right? No, Your Honor. Your Honor, what the solicitor, the director, is arguing is that because it was a settlement rather than a final judgment on the merits of the validity, for example, of the patents, that that was insufficient to constitute a finality, final judgment for the purposes of the appealability – excuse me – for the purposes of the collateral estoppel effect of the Markman determination. But even if it was a final judgment, what difference does it make? The Board wasn't a party to the original proceedings. Can you cite to me a single case that is applied collateral estoppel? Yes, Your Honor, I can. Against the party? Yes, Your Honor. That wasn't a party to the earlier case? What is that case? Yes, Your Honor. In Ray Freeman. No, that's a situation in which it was applied against the applicant, not against the Board. Right. Well, now wait a minute now. So you mean that if I went into the Board, if I had gone into the patent examiner and I had argued to the patent examiner that I wasn't bound by that Markman determination, if I had made that simple argument, that would have then mean that the Board would be required to apply that against me? You seem not to be familiar with the general rules of collateral estoppel. Under the restatement, under every case that I'm aware of, you can't apply collateral estoppel against a party who wasn't a party to the earlier proceeding. It's just the general rule. Well, I can also, Your Honor, give you two points in response to that. First of all, there are cases, and we have briefed those cases, where the courts have found that that party's interests were represented in the earlier litigation. Collateral estoppel has been found in those instances. How are the Board's interests represented by the other private party? How can that be? Because, for example, in this instance, transsexes actually argued for the broader interpretation, and we lost. But still, how can the sovereign be said to be represented by the lawyer for a private company? It just seems extreme on its face. I contend that the situation here is on all fours with Freeman, and that it doesn't matter whether it's applied against the Patent Office. But it's not on all fours with Freeman, because in Freeman it was applied against the applicant, not against the Board. I disagree. I disagree. I'll say why. Because, and I don't mean to get angry, but I'll tell you why. In Freeman, the Board thought the claim to construction was wrong. It wanted to change the claim to construction, and the Board said, we're bound. So in that instance, the collateral estoppel was held against the Board. The Board wanted to change the claim to construction, and it felt that it was bound by it. It was bound to apply it against the applicant, not in the applicant's favor. Mr. Parker, the government argues that in any event, Judge Sparks never gave the construction, including the notion of a ratio of one for one. And the ratio of one for one seems to be critical to your argument here, so that even if collateral estoppel did apply, it wouldn't get the outcome that you want, because one for one was not part of the construction by Judge Sparks. I'd like to answer that in two ways, Your Honor. First of all, I'd like to address that specifically, but I'd also like this Court not to lose sight of the fact that we contend that even if collateral estoppel doesn't attach, that the Board constructed the claim wrong, and I'd like to get into that for a little bit. But let me address that question first. Trans-Texas argued, as you can tell from the Markman order, Trans-Texas argued that it was not a one-to-one correspondence. The defendant argued that it was a one-to-one correspondence, and as far as I can tell from Judge Sparks' comments in the last paragraph, and that's S.A. 200. In this last paragraph, he basically says, nor does claim fall for a specific definition other than to argue that it does not require a one-to-one correlation with the rate of inflation. And it looks to me, and it looks to the reader, as if the Board is saying, we're going to go with the defendant on this, who argued that there was a one-to-one correlation. However, under these circumstances and based on this record, the Court is persuaded that the phrase, as a function of the rate of inflation, has the same meaning as responsive to the rate of inflation, which has been construed as directly responsive to a market indicator of prior actual inflation. Yeah, but my question was, where did Judge Sparks construe the disputed language as requiring a one-for-one ratio? Your Honor, that's implied. So we have an implied claim construction? I've never heard of such a thing. He lists all the disputed phrases at the end of his order, and he gives a construction for each disputed phrase. In none of those constructions can you find the one-for-one ratio idea. Well, he says directly responsive, so let's go and see. Well, directly doesn't necessarily mean one-for-one ratio, I wouldn't think. Well, I'd like to direct this Court's attention to how the Board dealt with this issue, and I'd like to turn to A. Rev. 013, please. And there the Board's saying – because the Board recognizes that the phrase responsive in the claims is modified by the term directly. So the Board finds that in their ruling. It says, as for the effect of the use of directly responsive to instead of responsive to in the definition, the broadest reasonable interpretation of the chosen phraseology is that it was meant to emphasize that the calculations of inflation adjustment must be based on the market indicator. Our contention is that that's what responsive means. The word directly has to mean something in addition to responsive. Otherwise, we would have said responsive means responsive. But we said responsive means directly responsive. So then at the top of A. Rev. 014, the Board then goes to a dictionary. Well, why isn't it directly responsive to an inflation index if I always multiply the inflation index by 0.9, or I always multiply the inflation index for the successive periods by 1.1, or any other ratio? That would be – we would argue that that is what responsive means. You've got to give some meaning to responsive before you can then give meaning to directly responsive. I would argue that what you've described is responsive. What we've defined is directly responsive. In fact, the definition right here given by the Board is, out of American Heritage Dictionary, without anyone or anything intervening. But a 0.9 or a 1.1 ratio applied against an index measurement doesn't have any intervening figure. It's simple multiplication. It does have an intervening figure on it. You're changing the rate of inflation by adding an additional multiplier. It's no longer directly responsive to inflation. It's directly responsive to inflation plus the multiplier you've decided to add in that you have, through your intervention, have added in. As contrary to the definition set forth for directly relied upon by the Board. Any time that you add in some figure between the market indicator and what is paid out of the account, you have intervened in that relationship. Well, you intervene as much as I do. You just intervene with 1.0 and say I can't use 0.9 or 1.1. You're bringing in a new figure just as much as I am. I don't know about where 1.0 comes in, Your Honor, other than the fact that one— Pardon me. One for one. One for one just means it's directly responsive. It goes up 0.0002 and the account is adjusted 0.0002. There's no intervening figure that comes between— Why didn't you just amend the claims during the reexamination? Your Honor, because these patents are very close to expiring, and I was a little concerned about intervening rights. How can this fail to be obvious anyway under KSR? It's just a concept of having accounts that are inflation-adjusted both for deposits and— Well, first of all, will you agree with me, Your Honor—well, I wanted to ask you a question. The fact is, Your Honor, that there is a difference. There is a difference between what we're claiming and the claims are properly construed and what the prior art teaches you to do. The prior art says go up at 2%. Forget about the prior art. That's not the question I'm asking. I'm asking you under KSR, isn't this perfectly obvious that what you're trying to do— Absolutely not. Wait. What you're trying to do is to patent a concept of inflation-adjusted accounts, which is perfectly obvious over the general knowledge, isn't it? No, Your Honor. Why not? It's not because one thing—in fact, KSR supports our position. KSR requires that there be specific finding of an apparent reason why one skill in the art would have adjusted—would have changed the prior art to comport with what is being claimed. There has to be some substantial evidence that one skill in the art would have made that jump from what the prior art is doing to what you're claiming. The prior art went up in 2% increments. It did that for a specific reason. It went up in 2% increments to provide a barrier to the payout of the account. Our accounts have no such barrier. Do you want to save your remaining little bubble time? Yes, sir. Thank you. Mr. LaMarca? Respectfully, Your Honor, we disagree on all this. Do you know about the Mendoza case? We don't, Your Honor. It doesn't reflect terribly good research. I mean, it would seem to be a pretty important case because it holds that non-mutual collateral estoppel can't be applied against the government. I'm sorry, Your Honor, we don't have the case in our brief. We don't really feel collateral estoppel drives this case at all because, for a number of reasons, it doesn't apply. Even without that case, it doesn't apply. When you're reading Ray Freeman directly, the case is distinguishable. If you look at the four factors of collateral estoppel, none of the four factors are met. Not only was it applied against the wrong party, so that's the number one reason why it would not apply, but in addition, the issues aren't the same. Although they're both claim construction issues, one was claim construction in Freeman about improper claim broadening, and they used a test, an infringement test, to determine whether or not the claim was improperly broad in Freeman. Here, we're talking about interpreting the claim for purposes of applying the prior article. Totally different issues. Therefore, it doesn't apply for that reason either. Moreover, it wasn't fully litigated. We had a markman hearing. We had a settlement after the markman hearing. The issues weren't fully litigated at the district court. The markman order wasn't final for purposes of appeal. Whether or not it's final for purposes of collateral estoppel or not might be debated amongst the different districts and different circuits. Nevertheless, that markman order could have been changed if there had been a trial, there would have been more information, there would have been more evidence to be considered. The court could have modified the markman order. Therefore, the level of finality necessary to apply collateral estoppel at all didn't exist. In fact, this court, I think he cited, I think the pundit cites RF, the dollar of Delaware case, and in that case, there was a settlement. And because of the settlement, a later case by this court, I think the Dana case, commented and said, in that case, things could have changed. Things could have been altered, and therefore, because it was settlement, it wasn't fully exhausted. It wasn't appropriate for collateral estoppel. But even all of that law, none of it says ever that the collateral estoppel claim construction would ever apply against the PTO in a re-exam and administrative proceeding, because it's well settled. Inmate Etter in Bronx, Ethicon B. Quigg, Yamamoto, numerous cases by this court say claim broadest reasonable interpretation is applied to the PTO, which is a different standard than what gets applied in an infringement suit. Why? Why is it functional to have a different standard? What's the purpose of it? Well, it goes back to the presumption of patentability, Your Honor. The Etter case fully explains that the presumption of patentability does not occur within the PTO. Whether you're in an initial examination or whether you're in a re-examination, there is no presumption of patentability. Because of that lack of presumption of patentability, the claim does not apply. What I'm trying to get at is this. The broadest reasonable construction seems to make a differentiation between a breadth so that it necessarily contemplates something that's broader than the ultimate correct construction that a district court in litigation may conclude. So if it's known to be less accurate over broad and you have a circumstance, we may not have it here, but let's assume you do have a circumstance where you have a district judge correct construction, then why doesn't it make sense for the system to use the more accurate of the two available constructions? The PTO is free to consider the construction that took place at the district court and include that in determining what the broadest reasonable construction is. You're not answering my question. If you have a correct construction of a claim and you have as an alternative to rely on an over broad construction, by definition it's over broad, then why doesn't it make more sense to use the accurate construction? Well, I think the PTO is still bound to apply a reasonably broad construction. Well, I'm questioning that. It can't be unreasonable. I'm questioning that. That's exactly my point. Why isn't it better policy, more logical, more accurate, more dependable, better in every way to use an authoritative litigated construction that purports to be the correct construction rather than an admittedly over broad construction? When you have both available, why not use the one that you know is more accurate? Yeah, particularly in a re-exam proceeding where under your theory of different constructions you could get a different result in the re-exam proceeding from the district court determination. Well, I think Ethicon v. Quigg addresses this issue. They talk about the situation where you could have a different claim construction and a different result in the district court suit. There could have been a finding of infringement in a district court case on a patent. They could have determined it's not invalid and it's infringed. Nevertheless, the PTO under Ethicon v. Quigg is told you still must go forward. You still must construe the claim with the broadest reasonable interpretation. You have different evidence. You have a different record. You have different burdens of proof, which is another point. In the PTO, in order to reject a claim, they only need to meet a preponderance of the evidence standard. Are you talking about examination or re-examination? Either way. They're treated equally. Well, no, no, no, no. There's a difference because in the case of examination, you normally aren't going to have an authoritative district judge correct construction of the claim. You won't have that available. That's correct. Yeah, exactly. So there's no choice. That's correct. But here we had some choice. And in a hypothetical case where you had a final judgment, suppose you had a final judgment affirmed here in a district court case. Yes, Your Honor. So the correct construction of the district court is agreed to by this court on de novo review. Under your argument, the PTO can nevertheless cast aside that affirmed correct construction and use, and it's much easier for the PTO because it makes obviousness easier to prove, an overbroad construction. Why does that make any sense? Well, the best explanation I can give for you is what's been explained in Ethic on Equate. Accordingly, the different results between the two forums may be entirely reasonable. For example, the district court could have done everything right, construed the claim correctly in the infringement context, and it goes all the way up, and the federal circuit affirms and says we find no error in what the district court did. There's a standard overview. It gets reviewed. They don't, even though it's de novo, they find no error in the overall determination of that district court. Then that patent, a new reference pops up. Somebody requests re-exam. It ends up in a re-exam proceeding. The PTO is now told by this court to go back to square one, treat that re-examination as if it was an initial patent application, as if no such patent was used. Well, I'm asking you why it makes sense, and you're just reciting the Ethicon. Well, I think the policy— That's not responsive. Maybe Ethicon is stupid. Maybe Ethicon should be changed. What's the logical reason to use an inaccurate construction? I don't think it was stupid. Well, it's an old case, but I remember working very hard on it. I'm not free to characterize it. It's also binding precedent. I'm not free to characterize it. And if it was stupid, I'd have had nothing to do with it. What I can say, I think there's a policy behind it, and the policy— Well, that's what I'm asking. And the policy does go back to the concept of the presumption of patentability, the fact that when an issued patent is out there being asserted an infringement, that patent has to be treated with the statutory presumption of patentability, 35 U.S. Code 282, I believe. Well, let me just—you're talking about stupidity and other things, and we're focusing on the district court making a claim construction. Sure. Our court says that the claim construction of a district court is entitled to absolutely no deference. And so it can't be the definitive meaning of a claim when— It gets reviewed in OVA. Well, it gets reviewed in OVA. But so is the PTO. We're talking about district courts. Correct. I mean, the law is unusual in this field, but— But I think if you look at EDER and you look at the Condi-Quigg, I think they do go back to the original policy that Congress had in mind when they passed the reexamination statute. When they passed the reexamination statute, Congress intended for that patent to come back into the patent office, be reopened as if it was a fresh application all over again, and to go back and look at the claim as if it was being evaluated in its initial context with the broadest reasonable construction, not to be treated as it was in the district court. Now, does that mean the district court's claim construction in all instances is unreasonable? No. Does that mean the PTO may not apply the same construction in certain instances where they view that as a broadest reasonable interpretation? That could happen. But the PTO is not bound to follow that district court's claim construction. And I think that is clear in the EDER. I think that's clear in the Condi-Quigg. And I think the policy—why? Why is it like this? It does go back to the fact that Congress is trying to say, hey, when you've got an issued patent in commerce being asserted in a litigation environment, that patent is supposed to have this presumption of patentability. Therefore, the district court construes the claim with an eye towards finding the patent valid. There's a slant towards finding the patent valid. Whereas at the PTO, the claim is construed broader. With a broader look, it still must be reasonable. But it's a broader look because the PTO's job is to vet that claim against prior art. In this case, for example, here, the evidence is not the same. The prior art that's being considered by the PTO with respect to this claim was never considered by the district court. The issue of invalidity was never argued at the district court. Here, the issue of validity or patentability of this claim is the issue before the PTO. Accordingly, under the PTO's legal standards for claim construction, under the different evidence in their record, all of these factors amount to the one conclusion that the issues are not identical in the two proceedings, and therefore the collateral estoppel doctrine does not apply just because of that alone. Now, there's all the other factors as well. Judge Jike pointed out, you're trying to apply collateral estoppel against the government. That can't happen here. We agree we don't have the Supreme Court case cited in our brief. However, we agree that the PTO was not party to that district court suit. The public was not part of that district court suit. And now we can't apply, bind the PTO or stop the PTO under the collateral estoppel doctrine when they were not represented in that district court suit, nor were their interests represented in that district court suit. So when you look at all of the factors that fall under the collateral estoppel doctrine, it is simply inapplicable to the PTO in this context. And the Freeman case, which is the one case that appellant cites that related somewhat to the PTO, is completely different because at Freeman, just like Judge Jike said, estoppel was applied against Mr. Freeman. Estoppel wasn't applied against the PTO. The PTO was the tribunal applying the doctrine against the party, just like a court would apply the doctrine against the party. So that is a key distinction in the Freeman case. Moreover, in Freeman, the issues were identical. They both had infringement constructions, not an infringement construction and a broadest reasonable interpretation construction. They had infringement constructions because the issue wasn't about applying prior art to determine validity of the claim. The issue was about improper claim broadening, which you're not allowed to do in a reexam via statute. So I think it's clear from our perspective that collateral estoppel is not applicable. Regardless, even if collateral estoppel were applicable, looking at the Markman order in this case, we don't agree with the characterization by appellant about that Markman order. When you look at this Markman order and look at it closely, at the very last page of the Markman order, the judge construes the claims. And he goes down through each claim term construing those claims. And when you come to the claim term that's at issue, which is responsive to the rate of inflation on page A667 or A203, either page, this judge simply cites the language out of the specification, directly responsive to a market indicator of prior actual inflation, and it is not meant to include the market expectation of future inflation. There is nothing about one-to-one, nothing about directly proportional, nothing about continuous, nothing about the claim term that appellant is now trying to read into the claim. So we don't even think that the board is inconsistent with the district court's Markman order, if we really wanted to go there, but we don't think we have to. Moreover, when you look at the specification in this case, there are multiple disclosures in the specification. They have partial hedging, full hedging, full hedging and matched hedging. Their claims encompass a multitude of different variations of the type of responsiveness that might take place. So we think the board's construction of the claim language here is reasonable. We don't disagree that it's broader than what plaintiff or what appellant is arguing. He's trying to argue a more narrow interpretation. We think it's slightly broader than that, but it's reasonable, and they're following the law and the application of the construction standard as they perform that. Moreover, the prior art references have these features. Even if this court were to go with the argued construction, the argued more narrow one-to-one construction, if you look at the prior art, the McKergee reference, it talks about inflation adjustment accounts for banks back in the 1950s. They talk about multiple types of inflation adjustment. They talk about step-type inflation adjustment. They talk about 100% proofing, 50% proofing, and we've discussed, we've pointed to these in our brief. If you go through our brief, you'll see specific citations that the McKergee reference, the prior art, teaches multiple types of inflation adjustment. We think all of that leads on the claim as we've interpreted it, and moreover, even if you read this more narrow construction here, we still think the claim would be rendered unpalatable. Finally, Judge Dyke's comments about KSR, just the concept of what they're doing here, let's think about what's happening here. We've got old, well-known inflation adjustment methods that banks for years and years and years have engaged in. Inflationary economies all over the world have had to deal with this issue. When there's high-inflation economies, banks and investment entities often offer inflation adjustment-type investments. Why? They wouldn't be able to track the investment if they didn't do it, so they do it. That's well-known. There's nothing new about that. That's existed for 50 years. The other thing that's in this case is an automation of that with a computer. We've presented prior art where it's known to automate financial and balancing of accounts and banks. Therefore, all that's really being done is the automation of a well-known method, known method. Time has expired. Thank you, Your Honor. Thank you. Mr. Parker, one minute. Your Honor, regarding your point on the Mendoza case, while I'm not familiar with it, I will assume that that was the case in which the government was imparting. You have a citation to it. It's 464 U.S. 154. Thank you, Your Honor. I'm going to assume that in that case the government was imparting. In this case, the government is not imparting. PTO is not imparting. This is an ex parte action. So I would assume that that case is a case where the government was imparting, then that case should be inapplicable here. Secondly, the policy says that once the claims have been construed, it doesn't make any sense that a patent owner then has to go face an entirely different set of circumstances and reexamination. It simply doesn't make sense. It's not logical because then you're put into the difficult situation of having to face a broad interpretation and then having to amend the claim, which has all kinds of consequences potentially in terms of intervening rights. Well, the claim construction is not final. The case may be over, but that is not final. That's not the last word on it in the district court. That's right, Your Honor. Here there was the opportunity to appeal, but no appeal was taken. With respect to the 100% proofing, Your Honor, I think that's not exactly correct. The 100% proofing, I mentioned in this one particular piece of prior art, still had this stepwise function where it had to go up at least 2% or there was no inflation adjustment at all. All right. We thank you both. We'll take the case under advisement.